IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


TERRY L. JOHNSON,

       Plaintiff,

    v.

GALLIA COUNTY
COMMISSIONERS, et al.,

       Defendants.

Case No. 2:20-cv-65
Judge Sarah D. Morrison
Magistrate Judge Elizabeth P. Deavers


<u>OPINION AND ORDER</u>

This matter is before the Court for consideration of Plaintiff's Motion for an Order to Release Documents.  (ECF No. 35.)  The Motion is fully briefed and is ripe for decision.  For the following reasons, Plaintiff's Motion (ECF No. 35) is **DENIED**.

**I.**

This case arises out of an incident at the Gallia County Jail occurring on May 7, 2019, in which Plaintiff was attacked by six other inmates and allegedly suffered severe, permanent injuries as a result.  (ECF No. 1 at PAGEID # 3; ECF No. 35 at PAGEID # 228.)  Plaintiff alleges, in part, that Defendants were deliberately indifferent and were responsible for the attack, because Defendants placed inmates who had been classified as violent in the same area as Plaintiff, despite Plaintiff's previous request to be separated from those inmates due to prior disputes.  (*Id.*)  On or about May 31, 2019, Plaintiff requested the production of "the complete criminal record and all booking information of all inmates confined to Gallia County Jail from May 1st 2019, to May 31st, 2019."  (ECF No. 35-1 at PAGEID # 244.)  Plaintiff states he

requested such information so that his expert could "determine whether there was proper separation of prisoners and whether Defendants acted with deliberate indifference." (ECF No. 35 at PAGEID # 230.)

On May 15, 2020, Defendants objected to the request, and stated that Plaintiff "is not entitled to receive the criminal records of an entire inmate population over the course of one month, and such information . . . is specifically prohibited from disclosure pursuant to R.C. §2913.04." (ECF No. 35-1 at PAGEID # 244.) Without waiving the objection, Defendants nevertheless produced the criminal prosecution case files for all of the inmates involved in the subject incident. (*Id.*) On October 13, 2020, Plaintiff's counsel sent Defendants' counsel an email requesting "the booking information and specifically the criminal records reviewed by the intake officers during that window of time." (ECF No. 35-2.) On October 16, 2020, Defendants' counsel sent Plaintiff's counsel an email with an attachment containing 323 pages of booking information for all male inmates in Gallia County Jail "B" Block on May 6, 2019 and May 7, 2019, which Defendants' counsel wrote was "in response to [the] original document production [r]equest" and was further responsive to the October 13, 2020 email as well. (ECF No. 35-3 at PAGEID # 251.) Defendants' counsel also "reiterate[d] that [they] are prohibited from accessing and/or releasing the criminal records of other inmates." (*Id.*)

On October 29, 2020, less than two weeks later, Plaintiff's counsel filed the subject Motion, seeking an order to release the criminal records of "all inmates confined to Gallia County Jail from May 1st, 2019, to May 31st, 2019." (ECF No. 35 at PAGEID # 229.) Of note, Plaintiff's counsel does not appear to have met and conferred with Defendants' counsel prior to filing the Motion, as Plaintiff's counsel submits that "[t]his is not a standard discovery dispute that would activate [the] Local Rule" requiring a meet and confer. (*Id.*)

## II.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  "'It is well established that the scope of discovery is within the sound discretion of the trial court.'"  *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).  The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ."  Fed. R. Civ. P. 26(b)(1).  While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Determining the scope of discovery is within the Court's discretion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."  *Gruenbaum v. Werner*

*Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted).  If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome."  *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015).  "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Despite being construed broadly, the concept of relevance is not unlimited.  *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009).  Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses."  *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard.  *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case,

the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

### III.

As a preliminary matter, the Court flatly rejects Plaintiff's suggestion that "[t]his is not a standard discovery dispute that would activate [the] Local Rule" requiring a meet and confer. (ECF No. 35 at PAGEID # 229.) Plaintiff unsurprisingly provides no authority for this presumptuous statement, and instead appears intent to force this issue before the Court without attempting to comply with Local Rule 37.1, which states:

> Objections, motions, applications, and requests relating to discovery **shall not be filed in this Court** under any provision in Fed. R. Civ. P. 26 or 37 **unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences**. After extrajudicial means for the resolution of differences about discovery have been exhausted, **in lieu of immediately filing a motion under Fed. R. Civ. P. 26 or 37, any party may first seek an informal telephone conference with the Judge assigned to supervise discovery in the case**.

S.D. Ohio Civ. R. 37.1 (emphasis added). Plaintiff also makes no reference to Federal Rule of Civil Procedure 37(a)(1), which allows a party to move for an order compelling discovery so long as the motion includes "a certification that the movant has in good faith conferred or

attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  Further, as Defendants correctly observe, Plaintiff also filed the subject Motion in direct contravention to the Court's Preliminary Pretrial Order in this case.  (ECF No 13 at PAGEID # 145 ("If the parties are unable to reach an agreement on *any matter related to discovery*, they are directed to arrange a conference with the Court.") (emphasis added).)  Contrary to Plaintiff's assertion, this is a standard discovery dispute, and the Court does not appreciate Plaintiff's circumvention of the standard rules of practice in this Court.  Future disregard of the Court's rules and orders will not be countenanced.

Nevertheless, construing the Motion as an improperly filed Motion to Compel and applying the foregoing authority, the Court will consider the pending Motion on its merits.  Upon such review, the Court concludes that Plaintiff has not shown that he is entitled to the requested documents.  First, the Court agrees with Defendants that disclosure of other inmates' criminal records is specifically prohibited from disclosure under Ohio and Federal law.  Second, the Court finds that Plaintiff is not entitled to the booking files of all inmates confined to Gallia County Jail from May 1st, 2019, to May 31st, 2019, as this information is disproportional to the needs of the case and its production would be unduly burdensome.  Defendants already have provided hundreds of pages of booking information for every inmate who was in the "B" Block at the time of the alleged assault.  The Court finds that this production is sufficient to address Plaintiff's concerns.  The Court will analyze each of these issues in turn.

A.      **Disclosure of Criminal Records**

Plaintiff's first request is for "the complete criminal record . . . information of all inmates confined to Gallia County Jail from May 1st, 2019, to May 31st, 2019."  (ECF No. 35-1 at PAGEID # 244.)  Plaintiff argues that he "is unable to obtain pertinent information needed for

Plaintiff's expert to determine whether there was proper separation of prisoners and whether Defendants acted with deliberate indifference," and that his expert "needs to review any and all information that the jailers . . . reviewed when admitting all inmates," including all inmates' criminal records.  (ECF No. 35 at PAGEID # 230.)  Plaintiff argues that he is entitled to this information under Ohio Revised Code Section 2913.04 because he has a "legitimate purpose" for seeking the records.  (*Id.* at PAGEID ## 230-232.)

In response, Defendants argue that such information is protected by law and cannot be disseminated in a civil case.  (ECF No. 36 at PAGEID # 269.)  Defendants note that the unauthorized release of such information is a felony under Ohio Revised Code Section 2913.04(C) and cite other analogous federal cases in which the courts held that such information is not subject to disclosure.  (*Id.* at PAGEID ## 269-270.)  In reply, Plaintiff maintains that because criminal records may be disseminated in the "administration of criminal justice," and because the court is a criminal justice agency, the criminal records at issue should be disclosed and used in this case.  (ECF No. 40 at PAGEID ## 284-285.)  Plaintiff also alternatively suggests that if Defendants stipulate that they have "violated Ohio Administrative Code § 5120 by failing to segregate violent from non-violent inmates," then Defendants can avoid the disclosure of the requested criminal records.  (*Id.* at PAGEID # 287-288.)

As both parties recognize, the requested criminal records are available through the Ohio Law Enforcement Gateway ("OHLEG") and the Ohio Law Enforcement Automated Data System ("LEADS").  Disclosure of such information is highly protected under Ohio law.  A criminal defendant may obtain access to certain relevant LEADS information pursuant to Ohio Revised Code Section 5503.101, but otherwise such information is protected by Ohio Revised Code Section 2913.04, which provides in relevant part:

(C) Except as permitted under section 5503.101 of the Revised Code, no person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the [LEADS] created pursuant to section 5503.10 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the chair of the law enforcement automated data system steering committee.

(D) No person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the [OHLEG] established and operated pursuant to division (C)(1) of section 109.57 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the superintendent of the bureau of criminal identification and investigation.

Ohio Rev Code § 2913.04(C), (D).  Violation of either of these statutes is a felony under Ohio law.  Ohio Rev. Code § 2913.04(H), (I).

The dissemination of LEADS information also is guided by the LEADS Manual and LEADS Security Policy.[1]  The LEADS Manual clearly indicates that "LEADS information [must be] disseminated only to authorized personnel for appropriate purposes" and "LEADS information may only be shared for *criminal justice purposes*."  *See* LEADS Manual at 8, available at https://leads.ohio.gov/Documents/Manuals/LEADSManual/General%20Information.pdf (emphasis in original).  As Defendants correctly observe, the LEADS Manual also specifically notes that "[o]ne of the most sensitive files accessed through LEADS is the Computerized Criminal History (CCH) file," which Plaintiff seeks here. *Id.* at 11.  The LEADS Security Policy sets forth strict guidelines for the dissemination of this information, and provides that "[d]ue to its comparatively sensitive nature, additional controls are required for the access, use and dissemination of [Criminal History Record Information]." *See* LEADS Security Policy at 11-13, available at https://ohio.cjisapps.com/security/launchpad/cjisdocs/docs.cgi?cmd=FS&ID=42&TYPE=DOCS.  Critically, neither the LEADS Manual nor the LEADS Security Policy

---

[1] The LEADS Manual and LEADS Security Policy are publicly available online and were incorporated into Defendants' response by reference.  (ECF No. 36 at PAGEID # 269.)

provides guidance for permitting the dissemination of third-party criminal history record information in a civil lawsuit.

Accordingly, the Court rejects Plaintiff's argument that he is entitled to the criminal history records because the drafters of the LEADS Manual "did not exclude dissemination for civil litigation" and "[i]t was clearly not their intention to prohibit such disclosure as discovery in a lawsuit as an appropriate purpose." (ECF No. 40 at PAGEID # 285.) Given the clear mandate that "LEADS information may only be shared for *criminal justice purposes*," the Court finds it untenable to assume that the drafters "clearly intended" for such information to be shared in civil litigation, especially in the complete absence of any guidance to that end.

Defendants are therefore correct that this information is protected by Ohio law, as the Northern District of Ohio previously held in *McCloskey v. White*, No. 3:09 CV 1273, 2011 WL 6371869 (N.D. Ohio Dec. 20, 2011). As that court found, "[t]he Ohio Administrative Code specifically restricts use and dissemination of LEADS data to 'authorized users,' which generally include only 'duly authorized law enforcement and/or criminal justice agencies for the administration of criminal justice,' and in any event **do not include private civil litigants**." *Id.*, 2011 WL 6371869, at *2 (emphasis added).

Moreover, Defendants are correct that this information is also protected by federal law. *See* LEADS Security Policy at 11 ("In addition to the dissemination restrictions outlined below, Title 28, Part 20, Code of Federal Regulations (CFR), defines CHRI and **provides the regulatory guidance for dissemination of CHRI**.") (emphasis added). Specifically, 28 C.F.R. § 20.33(a) limits the release of criminal history record information to specific entities, which are primarily criminal justice agencies. 28 C.F.R. § 20.33(a); *see also United States Dep't of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 752 (1989). An agency is

9

subject to revocation of its access to the criminal history information if it releases information in violation of the statute. 28 C.F.R. § 20.33(b); *Reporters Committee,* 489 U.S. at 752. As a matter of executive policy, criminal histories are generally treated as confidential and their use is restricted to governmental purposes, with limited exceptions. *Id.*

Plaintiff does not address these federal regulations, and instead resubmits his conclusory assertion that "[f]ederal law does not prohibit the disclosure of [] data for purposes of expert review in a civil rights matter." (ECF No. 40 at PAGEID # 286-287.) Plaintiff further posits that "[t]he purpose of 28 C.F.R. § 20.33 is to ensure that any criminal history record information dissemination for non-law enforcement purposes [is] to be safeguarded; that is, to guarantee that there are established governmental standards, controls, protections and oversight for such dissemination." (*Id.*) Plaintiff relies on *State ex rel. West Virginia State Police v. Taylor,* 499 S.E.2d 283 (W. Va. 1997), in which Plaintiff maintains "the court refused to impose an absolute bar to the dissemination of criminal history records to litigants." *Id.* This exact argument was rejected by the District of Arizona under analogous circumstances, however, because "[t]o the extent that the West Virginia Supreme Court held that 28 C.F.R. § 20.33(a)(3) provided dissemination if authorized by state statutes, § 20.33 was amended in 1999. **It now allows dissemination only if authorized by federal law**." *Klatt v. Arpaio*, No. CV-14-02711-PHX-SPL, 2016 WL 11663760, at *1 (D. Ariz. July 18, 2016) (emphasis added). Plaintiff has therefore failed to show that federal law authorizes his request.

Separately, to the extent Plaintiff argues that he "is requesting consent" under Ohio Revised Code § 2913.04(C), such a request is misplaced. That statute does not require consent from the opposing party or from a Court, but rather from "the chair of the law enforcement automated data system steering committee" (for the LEADS) or "the superintendent of the

bureau of criminal identification and investigation" (for the OHLEG). Ohio Rev. Code §
2913.04(C), (D).

Accordingly, Plaintiff has provided no legal basis for obtaining the other inmates'
criminal history records. Plaintiff is not an authorized user; he is not a criminal justice agency;
and he does not meet any of the exceptions under state or federal law. Accordingly, neither state
nor federal law allows production under the circumstances presented here. *See Klatt*, 2016 WL
11663760, at *1 (denying plaintiff's motion to compel another inmate's criminal history
information, which plaintiff alleged a Sheriff's Office had access to when making a classification
decision).

**B.     Disclosure of Booking Information**

Plaintiff also seeks "booking files of all inmates confined to Gallia County Jail from May
1st, 2019, to May 31st, 2019." (ECF No. 35 at PAGEID # 229.) As a preliminary matter, the
Court is satisfied that Plaintiff has demonstrated that the records are relevant. Here, Plaintiff
seeks the records so that Plaintiff's expert can determine whether Defendants were deliberately
indifferent in following the promulgated inmate classification procedures. (ECF No. 40 at
PAGEID # 282.) Applying the foregoing law under Federal Rule of Civil Procedure 26, the
Court agrees that a month's worth of booking records is relevant to Plaintiff's theory that
Defendants established a custom of violating classification procedures. (*Id.* at PAGEID # 283.)

This does not, however, end the inquiry. Rather, because Plaintiff has met his initial
burden of showing that such files are relevant, the burden shifts to Defendants to show that
producing the information is not proportional to the needs of the case or would be unduly
burdensome. *Prado*, 2017 WL 5151377, at *1. The Court finds that Defendants have met this
burden on both fronts.

11

First, Defendants have demonstrated that Plaintiff's request is not proportional to the needs of the case, especially in light of Defendants' previous document productions. In addition to producing records of prior assaults, Defendants already have produced a total of 323 pages of booking records which specifically relate to every inmate who was in the cell block in question on the day in question. (ECF No. 35 at PAGEID # 228-229.) Plaintiff has failed to show that these hundreds of pages of records previously provided by Defendants are insufficient. While Plaintiff correctly states that "[a]n isolated event is not enough to establish custom," ECF No. 40 at PAGEID # 283, Plaintiff's request far exceeds just an "isolated event," and Plaintiff already has received booking records which exceed an "isolated event." An expert can always review more documents, but just because Plaintiff's expert *could* review more records to opine whether Defendants had established a custom or pattern of deliberately indifference to classification procedures, that does not mean that they have to (or that they are entitled to).

Defendants also have sufficiently demonstrated that producing the requested booking information would be unduly burdensome. Specifically, Defendants highlight that "[i]f the booking records for one cell block on one specific day totaled 323 pages, then the booking records for all cell blocks for an entire month are likely to total thousands of pages." (ECF No. 36 at PAGEID # 272.) Defendants also stress the great burden this would place on the Gallia County Sheriff's Office, which is a small office with limited resources and personnel. (*Id.*) Specifically, Defendants estimate that "[i]f the sheriff's office dedicated a person full-time to this specific request, it would likely take one week to complete," and Defendants also note that "[o]f course, the sheriff's office does not have the personnel to dedicate an employee to this task for an entire week," implicitly suggesting that it could take weeks, if not months, to complete. (*Id.*)

In response to this argument, Plaintiff does not dispute that the request may require thousands of additional documents to be produced, or that fulfilling the request would significantly strain the already-limited resources of the Gallia County Sheriff's Office for an extended period. (ECF No. 40.) Instead, Plaintiff merely states that his request could have been *more* burdensome. (*Id.* at PAGEID # 283 (noting that Plaintiff "is specifically requesting booking records rather than *all* possible records on file") (emphasis in original).) This is not the standard, and Plaintiff's silence regarding the burden of production speaks for itself. Especially in light of the records Defendants already have produced, the Court finds that it would be unduly burdensome to produce all of the booking information requested.

Accordingly, having considered the relevant factors under Rule 26(b)(1), any benefit of obtaining the requested booking information does not outweigh the considerable burden in this matter, and it is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) ("We have noted that a plaintiff should have access to information necessary to establish her claim, but that a plaintiff may not be permitted to 'go fishing.'"); *Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015) ("In sum, '[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" (quoting *Surles*, 474 F.3d at 305)).

For the foregoing reasons, Plaintiff's Motion for an Order to Release Documents, ECF No. 35, is **DENIED**. Nevertheless, the parties are **DIRECTED** to meet and confer regarding whether they can come to an agreement as to a production larger than an effective one-day

period of booking records but less than a full-month of records.  Absent agreement between the

parties, they are once again directed to contact the Court and arrange a conference.

     **IT IS SO ORDERED.**


**Date: February 24, 2021**                              **/s/ _Elizabeth A. Preston Deavers_**
                                                         **ELIZABETH A. PRESTON DEAVERS**
                                                         **UNITED STATES MAGISTRATE JUDGE**